IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALLIANCE LAUNDRY SYSTEMS LLC,    )
)
      Plaintiff,    )    C. A. No.: _____
)
         v.    )    **JURY TRIAL DEMANDED**
)
PAYRANGE INC.,    )
)
      Defendant.    )

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

     Plaintiff Alliance Laundry Systems LLC ("Plaintiff" or "Alliance"), by and through its

undersigned counsel, files this Complaint for Declaratory Judgment against Defendant PayRange

Inc. ("Defendant" or "PayRange") and in support of its Complaint alleges as follows:

### INTRODUCTION

     1.    Alliance designs, invents, manufactures, distributes and sells premium

commercial laundry equipment for many businesses, including laundromats, multi-housing

facilities, hospitals, long-term care facilities, and on-premises laundries.

     2.    Alliance is a world leader in commercial laundry research and development and is

the assignee of numerous patents for its commercial laundry solutions.

     3.    Alliance is also a world leader in commercial laundry sales, with its products

distributed to more than a hundred countries around the world.

     4.     On information and belief, Defendant PayRange is the assignee of U.S. Patent

Nos. 11,972,423, 11,966,920, and 11,481,772 (collectively, the "DJ Patents").

     5.    Beginning in March 2024, PayRange sent a series of letters alleging that Alliance

infringes certain claims of the DJ Patents, either directly or through contributory infringement, or

by inducement, in connection with the installation and use of its "Speed Queen" and "Huebsch" mobile applications and payment systems.

6.     Alliance brings this action to protect its "Speed Queen" and "Huebsch" mobile applications and payment systems, and customers who use such applications and systems, from PayRange's claim that use of those instrumentalities infringes the DJ Patents.

## THE PARTIES

7.     Alliance is a limited liability company organized in Delaware with a principal place of business at 221 Shepard Street, Ripon, Wisconsin, 54971.  Alliance designs, develops, manufactures, distributes, and sells commercial laundry equipment, including payment mechanisms for such equipment.

8.     On information and belief, Defendant PayRange is a Tennessee corporation with its principal place of business at 9600 NE Cascades Parkway, Suite 280, Portland, OR 97220.

## JURISDICTION AND VENUE

9.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this action involves claims arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

10.     For the reasons set forth herein, an actual and justiciable controversy exists under 28 U.S.C. §§ 2201-2202 between Alliance and PayRange regarding the alleged infringement of the DJ Patents.

11.     PayRange is subject to personal jurisdiction in this District at least because (1) on information and belief, PayRange conducts business in Delaware, including by distributing products or services in Delaware, and (2) because of PayRange's purposeful, systematic, and

continuous contacts with Delaware in connection with its filing of a complaint in this District asserting U.S. Patent No. 11,481,772, its filing of other complaints in this District asserting other members of the same patent family, and its enforcement activities against Alliance, which is incorporated and conducts business in Delaware.

12.    Venue is proper in this Court as to PayRange pursuant to 28 U.S.C. §§ 1391(b) and/or 1391(c), because PayRange is subject to personal jurisdiction in this District and because a substantial part of the events giving rise to Alliance's claims, including the filing of the complaint asserting U.S. Patent No. 11,481,772, occurred within this District.

13.    Further, as explained more fully below, personal jurisdiction and venue are proper in this Court as to PayRange for at least the following reasons:

    i.    PayRange has previously initiated judicial action (i.e., filing a complaint for patent infringement) in this Court for infringement of U.S. Patent No. 11,481,772, which PayRange has also accused Alliance of infringing and which is one of the patents that is the subject of this Action (Count I);

    ii.    It would not be unduly burdensome for PayRange to litigate in this District, particularly where PayRange previously initiated a suit against CSC Serviceworks, Inc. to enforce the same U.S. Patent No. 11,481,772 in this District;

    iii.    PayRange has identified to Alliance its prior action asserting U.S. Patent No. 11,481,772 against CSC in this District, in a series of letters alleging Alliance's infringement of U.S. Patent No. 11,481,772 (discussed more fully below);

    iv.    PayRange has purposefully directed its enforcement activities with respect to the DJ Patents at Alliance, which is incorporated in Delaware; and

v.  PayRange's enforcement activities directly impact Alliance's ability to conduct business in this forum and Alliance's customers in this forum (discussed more fully below).

**THE DECLARATORY JUDGMENT PATENTS**

14.    The following patents, referred to herein as the DJ Patents, are at issue in this litigation.

15.    On October 25, 2022, the United States Patent and Trademark Office issued U.S. Patent No. 11,481,772 ("the '772 Patent"), entitled "Method and System for Presenting Representations of Payment Accepting Unit Events," to Paresh K. Patel.  A true and correct copy of the '772 Patent is attached to this Complaint as Exhibit 1.  On information and belief, PayRange is the current assignee of the '772 Patent.

16.    On April 23, 2024, the United States Patent and Trademark Office issued U.S. Patent No. 11,966,920 ("the '920 Patent"), entitled "Method and System for Presenting Representations of Payment Accepting Unit Events," to Paresh K. Patel.  A true and correct copy of the '920 Patent is attached to this Complaint as Exhibit 2.  On information and belief, PayRange is the current assignee of the '920 Patent.

17.    The '920 Patent is a continuation of the '772 Patent.

18.    On April 30, 2024, the United States Patent and Trademark Office issued U.S. Patent No. 11,972,423 ("the '423 Patent"), entitled "Method and System for Presenting Representations of Payment Accepting Unit Events," to Paresh K. Patel.  A true and correct copy of the '423 Patent is attached to this Complaint as Exhibit 3.  On information and belief, PayRange is the current assignee of the '423 Patent.

19.    The '423 Patent is a continuation of the '772 Patent.

## FACTUAL BACKGROUND

<u>PayRange's Prior Litigation with Kiosoft</u>

20.    Beginning in early 2020, PayRange began an aggressive campaign of patent litigation against companies that make, use, sell, or develop mobile payment systems.  More specifically, on March 3, 2020, PayRange filed an action in the U.S. District Court for the Southern District of Florida against Kiosoft Technologies, LLC ("KioSoft"), alleging infringement of other patents in the same family as the DJ Patents here.  *See* Case No. 1:20-cv-20970.

21.    The dispute between PayRange and Kiosoft evolved to include numerous cases in both this Court and at the Patent Trial and Appeal Board ("PTAB"), including a second patent litigation case brought by PayRange against Kiosoft, also in the U.S. District Court for the Southern District of Florida, filed on October 21, 2020, Case No. 1:20-cv-24342, and a petition to institute post grant review of the '772 Patent.  *See KioSoft Technologies, LLC v. PayRange Inc.*, PGR2023-00042 against U.S. Patent No. 11,481,772 (one of the DJ Patents).

22.    On information and belief, a complete listing of the cases between PayRange and Kiosoft is provided below:

i.    *PayRange Inc. v. Kiosoft Technologies, LLC*, Case No. 1-20-cv-20970, Southern District of Florida;

ii.    *PayRange Inc. v. Kiosoft Technologies, LLC*, Case No. 1-20-cv-24342, Southern District of Florida;

iii.    *PayRange Inc. v. KioSoft Technologies, LLC*, 2023-2378, Federal Circuit (appeal from Case No. 1-20-cv-20970);

iv.    *PayRange Inc. v. KioSoft Technologies, LLC*, 2023-2425, Federal Circuit (appeal from Case No. 1-20-cv-20970);

v.    *PayRange Inc. v. KioSoft Technologies, LLC*, PGR2023-00050 against U.S. Patent No. 11,501,296, PTAB;

vi.    *KioSoft Technologies, LLC v. PayRange Inc.*, PGR2023-00045 against U.S. Patent No. 11,488,174, PTAB;

vii.    *KioSoft Technologies, LLC v. PayRange Inc.*, PGR2023-00042 against U.S. Patent No. 11,481,772 (one of the DJ Patents), PTAB;

viii.    *Kiosoft Technologies LLC et al. v. PayRange Inc. et al*, CBM2020-00026 against U.S. Patent No. 9,659,296, PTAB;

ix.    *Kiosoft Technologies LLC et al. v. PayRange Inc.*, IPR2021-00086 against U.S. Patent No. 9,659,296, PTAB;

x.    *Kiosoft Technologies LLC et al. v. PayRange Inc.*, PGR2021-00077 against U.S. Patent No. 10,719,833, PTAB;

xi.    *Kiosoft Technologies LLC et al. v. PayRange Inc.*, PGR2021-00084 against U.S. Patent No. 10,891,608, PTAB;

xii.    *Kiosoft Technologies LLC et al. v. PayRange Inc.*, PGR2021-00093 against U.S. Patent No. 10,891,614, PTAB; and

xiii.    *Kiosoft Technologies LLC et al. v. PayRange Inc.*, PGR2022-00035 against U.S. Patent No. 11,074,580, PTAB.

23.    On December 14, 2022, the PTAB issued a final written decision in PGR2021-00093 finding that claims 1-6, 8-10, 14, 15, and 18-25 of U.S. Patent No. 10,891,614 ("the '614 Patent") recite patent ineligible subject matter under 35 U.S.C. § 101 because the claims recite

well-understood, routine, conventional activities previously known to the industry, specified at a high level of generality.  *See* Exhibit 4 at 43.

24.     On information and belief, PayRange did not appeal the PTAB's final written decision in PGR2021-00093.

25.     The '614 Patent is the parent to the '772 Patent.

26.     In KioSoft's petition to institute post-grant review of the '772 Patent, which asserted that claims 1-20 were unpatentable under 35 U.S.C. §§ 101 and 103, KioSoft noted that several of the challenged '772 Patent claims were very similar to the claims found to be ineligible in PGR2021-00093 for the '614 Patent. *See KioSoft Technologies, LLC v. PayRange Inc.*, PGR2023-00042, PTAB, D.I. 2 at 15, 38.

27.     As shown in the below table[1], claim 1 of the '772 Patent is materially identical to claim 1 of the '614 Patent.

| '772 Patent, claim 1 | '614 Patent, claim 1 |
|---|---|
| 1. A method of presenting representations of payment accepting unit events, comprising:<br><br>at a mobile device with one or more processors, memory, one or more output devices including a display, and one or more radio transceivers:<br><br>identifying one or more payment accepting units in proximity to the mobile device that are available to accept payment from a mobile payment application executing on the mobile device, the identifying <u>based at least in part on an identifier corresponding to</u> the one or more payment accepting units, wherein the one or more payment accepting units are <u>payment</u> | 1. A method of presenting representations of payment accepting unit events, comprising:<br><br>at a mobile device with one or more processors, memory, one or more output devices including a display, and one or more radio transceivers:<br><br>identifying one or more payment accepting units in proximity to the mobile device that are available to accept payment from a mobile payment application executing on the mobile device, the identifying <u>including detecting predefined radio messages broadcast by</u> the one or more payment accepting units, wherein the one or more payment accepting units are |

---

[1] Underlined text reflects differences in the wording used between each claim.

| '772 Patent, claim 1 | '614 Patent, claim 1 |
| --- | --- |
| operated machines that accept payment for dispensing of products and/or services;<br><br>displaying a user interface of the mobile payment application on the display of the mobile device, the user interface being configured to display a visual indication of the one or more payment accepting units and accept user input to (i) receive selection by a user of the mobile device of an available payment accepting unit of the one or more payment accepting units and (ii) trigger payment by the mobile payment application for a transaction initiated by the user of the mobile device with the available payment accepting unit of the one or more payment accepting units;<br><br>establishing via the one or more radio transceivers a wireless communication path including the mobile device and the available payment accepting unit of the one or more payment accepting units;<br><br>after establishing the wireless communication path, enabling user interaction with the user interface of the mobile payment application to complete the transaction;<br><br>exchanging information with the available payment accepting unit via the one or more radio transceivers, in conjunction with the transaction; and<br><br>after exchanging the information, displaying, on the display, an updated user interface of the mobile payment application to the user of the mobile device. | vending machines that accept payment for dispensing of products and/or services;<br><br>displaying a user interface of the mobile payment application on the display of the mobile device, the user interface being configured to display a visual indication of the one or more payment accepting units and accept user input to (i) receive selection by a user of the mobile device of an available payment accepting unit of the one or more payment accepting units and (ii) trigger payment by the mobile payment application for a vending transaction initiated by the user of the mobile device with the available payment accepting unit of the one or more payment accepting units;<br><br>establishing via the one or more radio transceivers a wireless connection between the mobile device and the available payment accepting unit of the one or more payment accepting units;<br><br>after establishing the wireless connection, presenting the user interface of the mobile payment application and enabling user interaction with the user interface of the mobile payment application to complete the vending transaction;<br><br>exchanging information with the available payment accepting unit via the one or more radio transceivers, in conjunction with the vending transaction; and<br><br>in response to receiving the information, displaying, on the display, an updated user interface of the mobile payment application to the user of the mobile device. |

28.     On November 22, 2023, PayRange disclaimed claims 1-6, 8-10, and 12-20 of the

'772 Patent. *See* Exhibit 5.

29.     As a result, only claim 11—the claim PayRange contends is infringed upon by Alliance—remained at issue in PGR2023-00042.

30.     On February 5, 2024, KioSoft and PayRange filed a joint motion to dismiss PGR2023-00042 before the PTAB made a decision on institution or reached a final written decision. *See KioSoft Technologies, LLC v. PayRange Inc.*, PGR2023-00042, PTAB, D.I. 7.

31.     In January 2024, PayRange and Kiosoft resolved their dispute with a settlement.

32.     PayRange issued a press release following its settlement with KioSoft. As of the time of this filing, the press release is still available at the following link: https://payrange.com/news/*payrange-settles-patent-dispute-with-kiosoft-securing-62-million-licensing-deal/. A true and correct copy of this press release is attached to this Complaint as Exhibit 6.

33.     The press release further states that "[PayRange] will continue to pursue enforcement of our payment app solution patents against all infringers." *See* Ex. 6.

<u>PayRange's Prior Litigation with CSC</u>

34.     While the litigation with Kiosoft was ongoing, PayRange initiated another wave of litigation, in this Court, against defendant CSC Serviceworks, Inc. ("CSC"). PayRange filed the first action against CSC in this Court on April 19, 2022 (the "First Delaware CSC Action"). *See* Case No. 22-cv-00502-VAC.

35.     The First Delaware CSC Action alleged infringement of U.S. Patent Numbers 8,856,045, 10,438,208, and 10,891,608. *See* Case No. 22-cv-00502-VAC, D.I. 1. The DJ Patents are continuations of U.S. Patent No. 8,856,045.

36.    Less than one year later, PayRange filed a second patent infringement action against CSC, also in this Court, and asserting the '772 Patent against CSC (the "Second Delaware CSC Action"). *See* Case No. 23-cv-00278-MN, Second Amended Complaint, D.I. 73.

37.    In addition to the '772 Patent, the Second Delaware CSC Action asserted U.S. Patent Nos. 8,856,045, 10,438,208, and 10,891,608.  *See* Case No. 23-cv-00278-MN, Second Amended Complaint, D.I. 73.  The DJ Patents are continuations of U.S. Patent No. 8,856,045.

38.    On March 4, 2024, PayRange filed a third patent infringement action against CSC, also in this Court (the "Third Delaware CSC Action").  *See* Case No. 24-cv-00279-MN, D.I. 1.

39.    The Third Delaware CSC Action alleged infringement of U.S. Patent Numbers 10,719,833, 10,891,614, and 11,488,174. *See* Case No. 24-cv-00279-MN, D.I. 1.  The DJ Patents are continuations of U.S. Patent Number 10,891,614.

40.    Like the dispute between PayRange and Kiosoft, the dispute between PayRange and CSC evolved to include a number of cases in both District Court and at the PTAB.  On information and belief, a complete listing of the various matters between PayRange and CSC is provided below:

  i.   *PayRange Inc. v. CSC ServiceWorks, Inc.*, 24-cv-00279-MN, D. Del.;

  ii.  *PayRange Inc. v. CSC ServiceWorks, Inc.*, 23-cv-00278-MN, D. Del.;

  iii. *PayRange Inc. v. CSC ServiceWorks, Inc.*, 22-cv-00502-VAC, D. Del.;

  iv.  *CSC ServiceWorks, Inc. v. PayRange Inc.*, IPR2023-01449 against the '772 Patent, PTAB;

  v.   *CSC ServiceWorks, Inc. v. PayRange Inc.*, IPR2023-01186 against U.S. Patent No. 8,856,045, PTAB;

vi. *CSC ServiceWorks, Inc. v. PayRange Inc.*, IPR2023-01188 against U.S. Patent No. 10,891,608, PTAB; and

vii. *CSC ServiceWorks, Inc. v. PayRange Inc.*, IPR2023-01187 against U.S. Patent No. 10,438,208, PTAB.

41.     CSC's petition for *inter partes* review of the '772 Patent, filed on October 9, 2023, asserted that claims 1-6 and 8-20 of the '772 Patent are unpatentable as obvious under 35 U.S.C. § 103.  *See CSC Serviceworks, Inc. v. PayRange Inc.*, IPR2023-01449, PTAB, D.I. 1.

42.     On November 22, 2023, PayRange disclaimed claims 1-6, 8-10, and 12-20 of the '772 Patent.  *See* Ex. 5.

43.     As a result, only claim 11—the only '772 Patent claim that PayRange contends is infringed upon by Alliance—remained at issue in IPR2023-01449.

44.     On April 12, 2024, the PTAB instituted *inter partes* review of claim 11 of the '772 Patent.  In its institution decision, the PTAB found a reasonable likelihood that CSC would prevail in establishing that claim 11 is unpatentable under 35 U.S.C. § 103.  *See CSC Serviceworks, Inc. v. PayRange Inc.*, IPR2023-01449, PTAB, D.I. 14, Exhibit 7.

45.     On April 17, 2024, CSC filed a motion to dismiss in the Second Delaware CSC Action, asserting that the '772 Patent is invalid under 35 U.S.C. § 101.  *PayRange Inc. v. CSC ServiceWorks, Inc.*, 23-cv-00278-MN, D.I. 79.

46.     On April 24, 2024, PayRange filed a notice of voluntary dismissal with prejudice, of the Second Delaware CSC Action. *PayRange Inc. v. CSC ServiceWorks, Inc.*, 23-cv-00278-MN, D.I. 82.

47.     On the same day, PayRange also filed a notice of voluntary dismissal with prejudice, of the Third Delaware CSC Action. *See PayRange Inc. v. CSC ServiceWorks, Inc.*, 23-cv-00279-MN, D.I. 8.

48.     On April 25, 2024, PayRange and CSC jointly moved to terminate IPR2023-01449. *See CSC ServiceWorks, Inc. v. PayRange Inc.*, IPR2023-01449, D.I. 16.

49.     As a result, a final decision regarding the patentability of claim 11 of the '772 Patent was never reached in the proceedings before this District or the PTAB.

<u>PayRange's Accusations and Threats Against Alliance</u>

50.     Shortly after PayRange resolved its dispute with Kiosoft in January 2024, on March 14, 2024, PayRange sent a demand letter to Alliance, accusing Alliance of infringing the '772 Patent that it had asserted against CSC in this Court, along with allowed claims from the applications that subsequently issued as the '920 and '423 Patents.

51.     PayRange's March 14, 2024 Letter accused Alliance of infringing the following claims:

i.   Claim 11 of the '772 Patent (infringement alleged only under the doctrine of equivalents);

ii.  Then-pending, but allowed, claims 1-6, 8, 9, and 12-20 of U.S. Patent Application 18/197,070 (later issued as the '423 Patent); and

iii. Then-pending, but allowed, claims 1-6, 8, 9, and 12-20 of U.S. Patent Application 18/197,071 (later issued as the '920 Patent).

Collectively, the above claims shall be referred to herein as "the DJ Claims."

12

52.     PayRange's March 14, 2024 Letter accused Alliance of infringing the DJ Claims by making, using, selling, or offering to sell the "Speed Queen" and "Huebsch" applications on the Google Play Store and the Apple App store, as shown in the images below:



Collectively, the Speed Queen and Huebsch applications are referred to herein as the "Accused Instrumentalities."

53.     PayRange's March 14, 2024 Letter also included claim charts purporting to demonstrate Alliance's infringement of the DJ Claims.

54.     Alliance substantively responded to PayRange's March 14, 2024 Letter via a response letter sent on April 25, 2024.

55.     Alliance's April 25, 2024 Letter explained in detail why Alliance does not infringe the DJ Claims, and also why the DJ Clams were likely to be found invalid or unpatentable in the pending disputes with CSC or otherwise.  Alliance further demonstrated that

the DJ Claims from the '423 and '920 Patents were nearly identical to the claims of the '772 Patent that PayRange had disclaimed during its litigations with CSC.

56.    PayRange responded to Alliance's April 25, 2024 Letter on May 17, 2024.

57.    PayRange's May 17, 2024 Letter rejected Alliance's arguments, and continued to assert that Alliance infringed the DJ Claims.

58.    PayRange's May 17, 2024 Letter also included, and emphasized, the following:

  i.   PayRange has for the last several years pursued enforcement of its payment app solutions against purported infringers, including through multiple litigations and related PTAB proceedings;

  ii.  PayRange's prior litigation against CSC in this District, including the action involving the '772 Patent, and the resolution relating thereto;

  iii. PayRange's representation that after the PTAB instituted *inter partes* review against claim 11 of the '772 Patent, and after CSC re-filed its motion to dismiss for lack of eligible subject matter pursuant to Section 101 in this Court against claim 11 of the '772 Patent, that CSC settled and took a license from PayRange that was favorable to PayRange;

  iv.  That PayRange continues to "firmly believe" that Alliance infringes claim 11 of the '772 Patent under the doctrine of equivalents; and

  v.   The May 17, 2024 Letter also urged Alliance to take a license.

59.    Alliance currently sells and distributes equipment to operators in Delaware. Accordingly, PayRange's enforcement activities directly impact Alliance's ability to conduct business in this forum and Alliance's customers in this forum.

60.     On May 31, 2024, counsel for Alliance sent a response email to PayRange, acknowledging receipt of PayRange's May 17, 2024 Letter.

61.     On June 12, 2024, PayRange sent an additional letter to Alliance ("the June 12, 2024 Letter").  PayRange's June 12, 2024 letter stated:

  i.    "Alliance must immediately cease and desist the unlicensed, infringing activities identified in [PayRange's] March 14, 2024 notice letter"; and

  ii.   "If Alliance does not promptly engage in negotiations with PayRange, we will assume that it prefers to resolve this matter in litigation."

62.     PayRange's March 14, 2024, May 17, 2024, and June 12, 2024 Letters to Alliance are referred to collectively as "PayRange Letters."

63.     On June 14, 2024, counsel for Alliance sent a response email to PayRange, acknowledging receipt of PayRange's June 12 Letter.

64.     On June 19, 2024, counsel for PayRange sent a response email to Alliance.

65.     In the PayRange June 19, 2024 email, PayRange stated that "[u]nless Alliance has a clear, definitive, and legitimate defense to PayRange's infringement charges in its next correspondence (which we did not see in your prior letters), PayRange is expecting that Alliance will either cease and desist selling and operating infringing products or accept the invitation to engage in a licensing discussion. Otherwise, Alliance is forcing PayRange to address this matter through litigation."

66.     In view of the foregoing, an actual controversy exists between Alliance and PayRange with respect to infringement of the DJ Patents, and this controversy is likely to continue.  Further, a threat of actual and imminent injury exists as to Alliance that can be redressed by judicial relief.  The injury to Alliance includes uncertainty as to whether the

development, use, and sale of certain Alliance products and services (as more particularly

identified below, in Counts I through III), will be free from infringement claims on each of the

DJ Claims.  Consequently, the injury is sufficiently immediate to warrant the issuance of a

declaratory judgment.

**COUNT I: NON-INFRINGEMENT OF THE '772 PATENT**

67.     Alliance incorporates by reference the preceding allegations of the Complaint.

68.     The PayRange Letters claim that Alliance infringes, directly or indirectly, one or

more claims of the '772 Patent.

69.     The '772 Patent purports to disclose methods and systems for presenting

representations of payment accepting unit events.  Claim 1 of the '772 Patent (from which Claim

11 depends) recites:

> A method of presenting representations of payment accepting unit events, comprising:
>
> at a mobile device with one or more processors, memory, one or more output devices including a display, and one or more radio transceivers:
>
> identifying one or more payment accepting units in proximity to the mobile device that are available to accept payment from a mobile payment application executing on the mobile device, the identifying based at least in part on an identifier corresponding to the one or more payment accepting units, wherein the one or more payment accepting units are payment operated machines that accept payment for dispensing of products and/or services;
>
> displaying a user interface of the mobile payment application on the display of the mobile device, the user interface being configured to display a visual indication of the one or more payment accepting units and accept user input to (i) receive selection by a user of the mobile device of an available payment accepting unit of the one or more payment accepting units and (ii) trigger payment by the mobile payment application for a transaction initiated by the user of the mobile device with the available payment accepting unit of the one or more payment accepting units;
>
> establishing via the one or more radio transceivers a wireless communication path including the mobile device and the available payment accepting unit of the one or more payment accepting units;

after establishing the wireless communication path, enabling user interaction with the user interface of the mobile payment application to complete the transaction;

exchanging information with the available payment accepting unit via the one or more radio transceivers, in conjunction with the transaction; and

after exchanging the information, displaying, on the display, an updated user interface of the mobile payment application to the user of the mobile device.

Ex. 1, '772 Patent, Claim 1.

70.    Claim 11 of the '772 Patent recites:

The method of claim 1, wherein the user interface of the mobile payment application, after establishing the wireless communication path, includes:

a visual representation of the available payment accepting unit;

an indication of a prepared balance; and

an affordance that when slid, indicates the initiation of the transaction;

wherein the affordance is slid in response to receiving a user input of swipe on the affordance displayed on the display of the mobile device.

Ex. 1, '772 Patent, Claim 11.

71.    Alliance has not infringed and does not infringe at least claim 11 of the '772 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, using, selling, or offering to sell certain Alliance instrumentalities, including but not limited to the Alliance Speed Queen and Huebsch mobile applications.

72.    PayRange cannot establish that the Speed Queen and Huebsch mobile applications practice at least the following limitations of claim 11 of the '772 Patent: "displaying a user interface of the mobile payment application on the display of the mobile device, the user interface being configured to display a visual indication of the one or more payment accepting units and accept user input to (i) receive selection by a user of the mobile device of an available payment accepting unit of the one or more payment accepting units and (ii) trigger payment by

the mobile payment application for a transaction initiated by the user of the mobile device with the available payment accepting unit of the one or more payment accepting units;" "establishing via the one or more radio transceivers a wireless communication path including the mobile device and the available payment accepting unit of the one or more payment accepting units;" and "wherein the affordance is slid in response to receiving a user input of swipe on the affordance displayed on the display of the mobile device."

73.    For example, Alliance's Speed Queen and Huebsch applications establish a wireless communication path *prior* to triggering payment by the mobile payment application for a transaction (sub-limitation (ii) above).

74.    Moreover, Alliance's Speed Queen and Huebsch applications do not include or use a "wireless communication path including the mobile device and the available payment accepting unit [i.e., laundry machine]." Instead, for the accused Alliance applications and systems, the only "wireless communication path" is between the mobile device and online cloud services.  The online cloud services then communicate with a "gateway" in the laundromat, with a separate connection between the "gateway" and the laundry machine.

75.    Additionally, the Speed Queen and Huebsch applications utilize a "button," not a "sliding" feature.  The Accused Instrumentalities therefore do not meet the "the affordance is slid in response to receiving a user input of swipe on the affordance displayed on the display of the mobile device."  Indeed, PayRange concedes there is no literal infringement of this limitation, instead resorting to the doctrine of equivalents to allege infringement of this claim.  But PayRange's broad doctrine of equivalents assertion would wholly eviscerate the "sliding" limitation, contrary to well-established case law.

76.    As alleged above, an actual controversy exists between Alliance and PayRange with respect to infringement of claim 11 of the '772 Patent, and this controversy is likely to continue.  Accordingly, Alliance seeks a judicial determination and declaration of the respective rights and duties of the parties with respect to claim 11 of the '772 Patent.

77.    A judicial declaration of non-infringement is necessary and appropriate so that Alliance may ascertain its rights regarding claim 11 of the '772 Patent.

### COUNT II: NON-INFRINGEMENT OF THE '920 PATENT

78.    Alliance incorporates by reference the preceding allegations of the Complaint.

79.    The PayRange Letters claim that Alliance infringes, directly or indirectly, one or more claims of the '920 Patent.

80.    The '920 Patent purports to disclose methods and systems for presenting representations of payment accepting unit events.  Claim 1 of the '920 Patent recites:

A method of presenting representations of payment accepting unit events, comprising:

at a mobile device with one or more processors, memory, one or more output devices including a display, and one or more radio transceivers:

identifying one or more payment accepting units that are available to accept payment from a mobile payment application executing on the mobile device, the identifying based at least in part on an identifier or location corresponding to the one or more payment accepting units, wherein the one or more payment accepting units are payment operated machines that accept payment for dispensing of products and/or services;

displaying a user interface of the mobile payment application on the display of the mobile device, the user interface being configured to display a visual indication of the one or more payment accepting units and accept user input selecting an available payment accepting unit of the one or more payment accepting units;

establishing via the one or more radio transceivers a wireless communication path including the mobile device and the available payment accepting unit of the one or more payment accepting units;

after establishing the wireless communication path, enabling user interaction with the user interface of the mobile payment application to complete a transaction with the

available payment accepting unit, wherein the user interface includes a visual representation of the available payment accepting unit, an indication of a balance, and an affordance that, in response to a user input, indicates completion of the transaction;

exchanging information with the available payment accepting unit via the one or more radio transceivers, in conjunction with the transaction; and

after exchanging the information, displaying, on the display, an updated user interface of the mobile payment application to the user of the mobile device.

Ex. 2, '920 Patent, Claim 1.

81.    Independent claim 13 of the '920 Patent recites:

A mobile device, comprising:

one or more radio transceivers;

one or more output devices including a display;

one or more processors; and

memory storing one or more programs to be executed by the one or more processors, the one or more programs comprising instructions for:

identifying one or more payment accepting units that are available to accept payment from a mobile payment application executing on the mobile device, the identifying based at least in part on an identifier or location corresponding to the one or more payment accepting units, wherein the one or more payment accepting units are payment operated machines that accept payment for dispensing of products and/or services;

displaying a user interface of the mobile payment application on the display of the mobile device, the user interface being configured to display a visual indication of the one or more payment accepting units and accept user input selecting an available payment accepting unit of the one or more payment accepting units;

establishing via the one or more radio transceivers a wireless communication path including the mobile device and the available payment accepting unit of the one or more payment accepting units;

after establishing the wireless communication path, enabling user interaction with the user interface of the mobile payment application to complete a transaction with the available payment accepting unit, wherein the user interface includes a visual representation of the available payment accepting unit, an indication of a balance, and an affordance that, in response to a user input, indicates completion of the transaction;

exchanging information with the available payment accepting unit via the one or more radio transceivers, in conjunction with the transaction; and

after exchanging the information, displaying, on the display, an updated user interface of the mobile payment application to the user of the mobile device.

Ex. 2, '920 Patent, Claim 13.

82.    Independent claim 15 of the '920 Patent recites:

A non-transitory computer readable storage medium storing one or more programs, the one or more programs comprising instructions, which, when executed by a mobile device with one or more processors, one or more output devices including a display, and one or more radio transceivers, cause the mobile device to perform operations comprising:

identifying one or more payment accepting units that are available to accept payment from a mobile payment application executing on the mobile device, the identifying based at least in part on an identifier or location corresponding to the one or more payment accepting units, wherein the one or more payment accepting units are payment operated machines that accept payment for dispensing of products and/or services;

displaying a user interface of the mobile payment application on the display of the mobile device, the user interface being configured to display a visual indication of the one or more payment accepting units and accept user input selecting an available payment accepting unit of the one or more payment accepting units;

establishing via the one or more radio transceivers a wireless communication path including the mobile device and the available payment accepting unit of the one or more payment accepting units;

after establishing the wireless communication path, enabling user interaction with the user interface of the mobile payment application to complete a transaction with the available payment accepting unit, wherein the user interface includes a visual representation of the available payment accepting unit, an indication of a balance, and an affordance that, in response to a user input, indicates completion of the transaction;

exchanging information with the available payment accepting unit via the one or more radio transceivers, in conjunction with the transaction; and

after exchanging the information, displaying, on the display, an updated user interface of the mobile payment application to the user of the mobile device.

Ex. 2, '920 Patent, Claim 15.

83.    Alliance has not infringed and does not infringe at least claims 1, 13, and 15 of the '920 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, using, selling, or offering to sell certain Alliance instrumentalities, including but not limited to the Alliance Speed Queen and Huebsch mobile applications.

84.    PayRange cannot establish that the Speed Queen and Huebsch mobile applications practice at least the following limitation found in each of claims 1, 13, and 15 of the '920 Patent: "establishing via the one or more radio transceivers a wireless communication path including the mobile device and the available payment accepting unit of the one or more payment accepting units."

85.    For example, Alliance's Speed Queen and Huebsch applications do not include or use a "wireless communication path including the mobile device and the available payment accepting unit [i.e., laundry machine]." Instead, for the accused Alliance instrumentalities, the only "wireless communication path" is between the mobile device and online cloud services. The online cloud services then communicate with a "gateway" in the laundromat, with a separate connection between the "gateway" and the laundry machine.

86.    Because the Speed Queen and Huebsch mobile applications do not practice at least the above limitation found in each of independent claims 1, 13, and 15 of the '920 Patent, Alliance likewise does not infringe the asserted dependent claims of the '920 Patent (Claims 2-6, 8, 9, 12, 14, and 16-20).

87.    As alleged above, an actual controversy exists between Alliance and PayRange with respect to infringement of the DJ Claims of the '920 Patent, and this controversy is likely to continue.  Accordingly, Alliance seeks a judicial determination and declaration of the respective rights and duties of the parties with respect to the DJ Claims of the '920 Patent.

88.     A judicial declaration of non-infringement is necessary and appropriate so that

Alliance may ascertain its rights regarding claims 1-6, 8, 9, and 12-20 of the '920 Patent.

## COUNT III: NON-INFRINGEMENT OF THE '423 PATENT

89.     Alliance incorporates by reference the preceding allegations of the Complaint.

90.     The PayRange Letters claim that Alliance infringes, directly or indirectly, one or

more claims of the '423 Patent.

91.     The '423 Patent purports to disclose methods and systems for presenting

representations of payment accepting unit events.  Claim 1 of the '423 Patent recites:

A method of presenting representations of payment accepting unit events, comprising:

> at a mobile device with one or more processors, memory, one or more output devices including a display, and one or more radio transceivers:

> identifying one or more payment accepting units in proximity to the mobile device that are available to accept payment from a mobile payment application executing on the mobile device, the identifying based at least in part on an identifier corresponding to the one or more payment accepting units, wherein the one or more payment accepting units are payment operated machines that accept payment for dispensing of products and/or services;

> displaying a user interface of the mobile payment application on the display of the mobile device, the user interface being configured to display a visual indication of the one or more payment accepting units and accept user input selecting an available payment accepting unit of the one or more payment accepting units;

> establishing via the one or more radio transceivers a wireless communication path including the mobile device and the available payment accepting unit of the one or more payment accepting units;

> after establishing the wireless communication path, enabling user interaction with the user interface of the mobile payment application to complete a transaction with the available payment accepting unit;

> exchanging information with the available payment accepting unit via the one or more radio transceivers, in conjunction with the transaction; and

> after exchanging the information, displaying, on the display, an updated user interface of the mobile payment application to the user of the mobile device.

Ex. 3, '423 Patent, Claim 1.

92.    Independent claim 13 of the '423 Patent recites:

A mobile device, comprising:

one or more radio transceivers;

one or more output devices including a display;

one or more processors; and

memory storing one or more programs to be executed by the one or more processors, the one or more programs comprising instructions for:

identifying one or more payment accepting units in proximity to the mobile device that are available to accept payment from a mobile payment application executing on the mobile device, the identifying based at least in part on an identifier corresponding to the one or more payment accepting units, wherein the one or more payment accepting units are payment operated machines that accept payment for dispensing of products and/or services;

displaying a user interface of the mobile payment application on the display of the mobile device, the user interface being configured to display a visual indication of the one or more payment accepting units and accept user input selecting an available payment accepting unit of the one or more payment accepting units;

establishing via the one or more radio transceivers a wireless communication path including the mobile device and the available payment accepting unit of the one or more payment accepting units;

after establishing the wireless communication path, enabling user interaction with the user interface of the mobile payment application to complete a transaction with the available payment accepting unit;

exchanging information with the available payment accepting unit via the one or more radio transceivers, in conjunction with the transaction; and

after exchanging the information, displaying, on the display, an updated user interface of the mobile payment application to the user of the mobile device.

Ex. 3, '423 Patent, Claim 13.

93.    Independent claim 15 of the '423 Patent recites:

A non-transitory computer readable storage medium storing one or more programs, the one or more programs comprising instructions, which, when executed by a mobile device with

one or more processors, one or more output devices including a display, and one or more radio transceivers, cause the mobile device to perform operations comprising:

identifying one or more payment accepting units in proximity to the mobile device that are available to accept payment from a mobile payment application executing on the mobile device, the identifying based at least in part on an identifier corresponding to the one or more payment accepting units, wherein the one or more payment accepting units are payment operated machines that accept payment for dispensing of products and/or services;

displaying a user interface of the mobile payment application on the display of the mobile device, the user interface being configured to display a visual indication of the one or more payment accepting units and accept user input selecting an available payment accepting unit of the one or more payment accepting units;

establishing via the one or more radio transceivers a wireless communication path including the mobile device and the available payment accepting unit of the one or more payment accepting units;

after establishing the wireless communication path, enabling user interaction with the user interface of the mobile payment application to complete a transaction with the available payment accepting unit;

exchanging information with the available payment accepting unit via the one or more radio transceivers, in conjunction with the transaction; and

after exchanging the information, displaying, on the display, an updated user interface of the mobile payment application to the user of the mobile device.

Ex. 3, '423 Patent, Claim 15.

94.    Alliance has not infringed and does not infringe at least claims 1, 13, and 15 of

the '423  Patent, either directly or indirectly, literally or under the doctrine of equivalents,

including through its making, using, selling, or offering to sell certain Alliance products,

including but not limited to the Alliance Speed Queen and Huebsch mobile applications.

95.    PayRange cannot establish that the Speed Queen and Huebsch mobile

applications practice at least the following limitation found in each of claims 1, 13, and 15 of the

'423 Patent: "establishing via the one or more radio transceivers a wireless communication path

including the mobile device and the available payment accepting unit of the one or more payment accepting units."

96.    For example, Alliance's Speed Queen and Huebsch applications do not include or use a "wireless communication path including the mobile device and the available payment accepting unit [i.e., laundry machine]." Instead, for the accused Alliance applications and systems, the only "wireless communication path" is between the mobile device and online cloud services.  The online cloud services then communicate with a "gateway" in the laundromat, with a separate connection between the "gateway" and the laundry machine.

97.    Because Alliance the Speed Queen and Huebsch mobile applications do not practice at least the above limitation found in each of independent claims 1, 13, and 15 of the '423 Patent, Alliance likewise does not infringe the asserted dependent claims of the '423 Patent. (Claims 2-6, 8, 9, 12, 14, and 16-20).

98.    As alleged above, an actual controversy exists between Alliance and PayRange with respect to infringement of claims 1-6, 8, 9, and 12-20 of the '423 Patent, and this controversy is likely to continue.  Accordingly, Alliance seeks a judicial determination and declaration of the respective rights and duties of the parties with respect to claims 1-6, 8, 9, and 12-20 of the '423 Patent.

99.    A judicial declaration of non-infringement is necessary and appropriate so that Alliance may ascertain its rights regarding claims 1-6, 8, 9, and 12-20 of the '423 Patent.

**PRAYER FOR RELIEF**

WHEREFORE, Alliance respectfully requests that judgment be entered:

A.     Declaring that Alliance does not infringe at least the following claims of the DJ Patents, directly or indirectly, literally or under the doctrine of equivalents, by the making, using, selling, offering to sell, and/or importing of the Accused Instrumentalities:

     i.  Claim 11 of the '772 Patent;

     ii.  Claims 1-6, 8, 9, and 12-20 of the '920 Patent; and

     iii.  Claims 1-6, 8, 9, and 12-20 of the '423 Patent.

B.     Awarding Alliance its reasonable attorneys' fees under 35 U.S.C. § 285; and

C.     Awarding any other remedy or relief to which Alliance may be entitled and which is deemed appropriate by the Court

### JURY DEMAND

Alliance demands trial by jury of all issues triable of right by a jury.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*

_____
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Stephanie N. Vangellow (No. 7277)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
svangellow@ycst.com

HONIGMAN LLP
Sarah E. Waidelich*
315 East Eisenhower Parkway, Suite 100
Ann Arbor, MI  48108
(734) 418-4200

Scott Barnett*
39400 Woodward Avenue, Suite 101
Bloomfield Hills, MI  48304
(248) 566-8496

Jenna E. Saunders*
155 North Wacker Drive, Suite 3100
Chicago, IL  60606
(312) 701-9322

*Pro hac vice* admission pending

Dated: June 20, 2024                    *Attorneys for Plaintiff Alliance Laundry Systems, LLC*